United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 24, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-30618

_____

HARLAN CAUSEY

                                    Petitioner - Appellant,


          v.

BURL CAIN, Warden, Louisiana State Penitentiary,

                                    Respondent - Appellee.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____


Before JONES, Chief Judge, and BARKSDALE and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

     This Court previously granted Petitioner Causey a Certificate

of Appealability ("COA") to determine whether limitations should

bar his application for habeas corpus.  Specifically, the COA

directs us to decide two questions: "whether the prison mailbox

rule should be used to determine the date on which Causey filed his

writ application to the Louisiana Supreme Court and whether Causey

is entitled to equitable tolling under the circumstances."[1]  We now

_____

     [1] *Causey v. Cain*, No. 04-30618, at 1 (5th Cir. Nov. 5,
2004)(interim order).  The grant of COA complied with *Slack v.
McDaniel* in finding that Causey asserted constitutional claims that
merit further consideration.  529 U.S. 473, 484 (2000).

write solely to answer the first COA question in the affirmative. Accordingly, we vacate the district court's dismissal and remand so that the district court may determine when Causey's application was delivered to prison authorities.[2]

## I.  BACKGROUND

A Louisiana jury convicted Causey of possessing cocaine and marijuana. Under the state's three-strikes law, Causey was sentenced to life in prison without parole. Causey timely appealed to Louisiana's Fourth Circuit Court of Appeal. On January 26, 2000, that intermediate appellate court affirmed Causey's convictions and sentences. *See State v. Causey*, 752 So. 2d 287 (La. App. 4th Cir. 2000).

Proceeding *pro se*, Causey then sought direct review in the Louisiana Supreme Court. Louisiana law required Causey to apply for a writ of certiorari within thirty days of the court of appeal's January 26th judgment. LA. SUP. CT. R. X. Within that thirty-day window, no later than February 25, 2000,[3] Causey signed

---

[2] The district court dismissed Causey's habeas petition solely on the ground of limitations without deciding or discussing the merits of Causey's claims. *See Causey v. Cain*, No. 03-0968, slip op. (E.D. La. May 20, 2004).

[3] In computing time periods, Louisiana follows the general rule that one terminal day is included and one is excluded. *See Housing Author. of Lake Arthur v. T. Miller & Sons*, 120 So. 2d 494, 500 (La. 1960) ("[W]hen an act is to be performed within a specified period from or after a day named, the rule is to exclude the first day and to include the last day of the specified period."); *see also Heirs of P.L. Jacobs, Inc. v. Johnson*, 59 So. 2d 691, 692 (La. 1952) (holding that a defendant denied rehearing in the

an application to the Louisiana Supreme Court. Causey also alleges that he placed the application in the prison mail system on or before February 25.[4] However, the Louisiana Supreme Court did not receive it until March 21, 2000. Causey's application remained on the Louisiana Supreme Court's docket for about eleven months. On February 16, 2001, the court rejected Causey's certiorari application in a one-word order: "Denied." *State v. Causey*, 785 So. 2d 837 (La. 2001).

Next, Causey pursued state habeas corpus relief. His state habeas petition, filed on August 13, 2001, was denied at all three levels of the Louisiana courts. *State v. Causey*, No. 383-600 (Orleans Parish Crim. Dist. Ct. Dec. 14, 2001); *State v. Causey*, No. 2002-K-0081 (La. App. 4th Cir. Jan. 29, 2002); *State ex rel. Causey v. State*, 836 So. 2d 127 (La. 2003). The Louisiana Supreme

---

intermediate court of appeals on November 30, 1951 could have filed for certiorari "on December 31st 1951 the 30th being Sunday").
    Accordingly, February 25th was within the thirty-day window because the date of the appellate court's decision, January 26th, cannot be included in calculating the period.

[4] There is a discrepancy as to exactly when Causey delivered his writ application. We granted a COA to address Causey's claim that he "timely filed a writ application to the Louisiana Supreme Court on February 25, 2000." *Causey v. Cain*, No. 04-30618, at 1 (5th Cir. Nov. 5, 2004) (interim order). Causey's post-COA brief to this Court asserts that he applied to the Louisiana Supreme Court on February 18, 2000. For its part, the State does not affirmatively concede that Causey delivered his application to prison authorities on either date. In accordance with our grant of COA, we assume for the purposes of this opinion that the relevant date is February 25, 2000. However, we will remand so that the district court can ultimately determine whether Causey gave his application to prison officials no later than February 25.

3

Court again, in a one-word order, "Denied" review at the post-conviction stage, this time on February 14, 2003.

On March 6, 2003, Causey filed for federal habeas corpus relief. 18 U.S.C. § 2254 (2000). The district court held that Causey had filed his section 2254 petition past the one-year limitation period. It reasoned that Causey's conviction had become final in February of 2000 because his *pro se* application for direct review in the Louisiana Supreme Court had been late under Louisiana law. We granted a COA[5] to decide, *inter alia*, "whether the prison mailbox rule should be used to determine the date on which Causey filed his writ application for direct review of the court of appeal's decision affirming his conviction." *Causey v. Cain*, No. 04-30618, at 2 (5th Cir. Nov. 5, 2004) (interim order).

## II.  STANDARD OF REVIEW

We review *de novo* an order dismissing a habeas petition as time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Giesberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir. 2002).

## III.  DISCUSSION

A.  CAUSEY'S FEDERAL HABEAS PETITION IS TIMELY IF THE PRISON MAILBOX RULE DEEMS HIS WRIT FILED NO LATER THAN FEBRUARY 25, 2000

Causey's federal habeas petition is timely if the prison

---

[5] Subsequent to its order of dismissal, the district court denied Causey's request for a COA. *Causey v. Cain*, No. 03-0968 (E.D. La. Jun. 15, 2004) (order denying COA).

4

mailbox rule sets the filing date for his application to the Louisiana Supreme Court no later than February 25, 2000. "AEDPA provides that a petitioner may file a habeas petition within one year of 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.' 28 U.S.C. § 2244(d)(1)(A) [2000]." *Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004). "[T]he time during which a properly filed application is pending in state court is not counted toward the federal limitations period, 28 U.S.C. § 2244(d)(2) . . . ." *In re Wilson*, 442 F.3d 872, 874 (5th Cir. 2006).

The question presented here is when Causey's conviction became final. If Causey's state certiorari application was timely filed on the date he presumably placed it in the prison mail system, then AEDPA's limitations period began running only after the Louisiana Supreme Court denied direct review on February 18, 2001. In that case, Causey filed for federal habeas well within AEDPA's time restrictions since the statute of limitations was tolled during the year-and-a-half that Causey's state habeas petition was pending. However, if Causey's state certiorari application is deemed filed only when the Louisiana Supreme Court received it, then the time expired for direct review in February of 2000 and his conviction became final at that time. In that case, AEDPA's time-bar forbids Causey's petition absent equitable tolling. Thus, we must decide

5

whether the prison mailbox rule should be applied to determine the filing date of Causey's application for direct review in the Louisiana Supreme Court.

B.    LOUISIANA LAW REQUIRES FEDERAL COURTS TO APPLY THE PRISON MAILBOX RULE UNDER THESE CIRCUMSTANCES

1.    *HOUSTON V. LACK* AND THE PRISON MAILBOX RULE

In *Houston v. Lack*, the Supreme Court held that a *pro se* petitioner's notice of appeal is deemed "filed" at the moment it is delivered to prison authorities for forwarding to the district court.    487 U.S. 266, 270-71.    Construing a federal rule of appellate procedure, the Court reasoned that *pro se* prisoners are at the mercy of prison authorities and cannot "personally travel to the courthouse" to ensure timely filing.    *Id.* at 270–74. Additionally, the *Houston* Court's rule minimizes disputes and uncertainty over when filing occurs: "Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one."    *Id.* at 275.    In light of these concerns, the Court held that Houston timely appealed in his federal habeas case even though the clerk stamped "filed" on his appeal one day late: Houston delivered his appeal to prison authorities within the thirty-day deadline.    *Id.* at 269.    The Supreme Court has since dubbed *Houston*'s holding the "prison mailbox rule."    *Johnson v.*

*United States*, 544 U.S. 295, 300 n.2, 125 S.Ct. 1571, 1576 n.2 (2005).

The *Houston* Court was interpreting federal procedural rules. Many state courts, however, have incorporated the prison mailbox rule as an incident of their state filing deadlines. *See Massaline v. Williams*, 554 S.E.2d 720, 721-22 (Ga. 2001); *Smith v. Pennsylvania Bd. of Probation and Parole*, 683 A.2d 278, 281 (Pa. 1996); *In re Jordan*, 840 P.2d 983, 993 (Cal. 1992). Other courts have rejected *Houston* as a matter of state law. *Grant v. Senkowski*, 744 N.E.2d 132, 134 (N.Y. 2001); *Hamel v. State*, 1 S.W.3d 434, 436 (Ark. 1999); *State v. Parmar*, 586 N.W.2d 279, 284 (Neb. 1998).

2. *COLEMAN V. JOHNSON* DOES NOT CONTROL

This Court has refused to extend the prison mailbox rule to Texas state habeas filings. *See Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999). On the other hand, the Louisiana Supreme Court has applied the prison mailbox rule with unfailing consistency as a matter of state law. *See State v. ex rel. Hensley v. State*, 876 So. 2d 78 (La. 2004); *State ex rel. Egana v. State*, 771 So. 2d 638 (La. 2000); *State ex rel. Ward v. State*, 741 So. 2d 658 (La. 1999); *State ex rel. Gray v. State*, 657 So. 2d 1005 (La. 1995); *State ex rel. v. Johnson v. Whitley*, 648 So. 2d 909 (La. 1995); *see also State v. Froiland*, 910 So. 2d 956, 959 n.4 (La. App. 5th Cir. 2005); *State v. Girod*, 892 So. 2d 646, 653 n.4 (La. App. 5th Cir.

7

2004); *Davis v. Huey P. Long Regional Medical Center*, 841 So. 2d 7, 9-10 (La. App. 3d Cir. 2003) (stating, "Louisiana has adopted the 'mailbox rule' . . ., holding that a document is considered 'filed' when it is delivered to prison officials"); *Tatum v. Lynn*, 637 So. 2d 796 (La. App. 1st Cir. 1994) ("We find the reasoning in *Houston v. Lack* supra to be persuasive on this issue. . . . Thus we hold that Tatum's [state] petition for judicial review . . . was filed at the time it was delivered to the prison authorities for forwarding to the district court").

*Coleman* does not require that we ignore the abundance of Louisiana case law following the prison mailbox rule. Although its reasoning is less than clear, *Coleman* is best understood as an interpretation of Texas law. *See* 184 F.3d at 402 (emphasizing that the case involved "postconviction applications in *state* court") (emphasis in original); *but see Torns v. Mississippi*, 54 Fed. App'x. 592 (5th Cir. Nov. 22, 2002) (unpublished) (stating both that petitioner's state applications were not "'properly filed' under Mississippi law" and not subject to the mailbox rule under *Coleman*). "This circuit, like most, holds that a properly filed [state] application [for collateral review] is one submitted according to the state's procedural requirements." *Lookingbill v. Cockrell*, 293 F.3d 256, 260 (internal punctuation omitted).[6] At

_____

[6] *See Larry v. Dretke*, 361 F.3d 890, 894-96 (5th Cir. 2004) (considering thoroughly Texas procedural law to determine whether a petitioner's state post-conviction application was properly filed

the time this Court decided *Coleman*, Texas law was unclear on, and arguably averse to, the prison mailbox rule. *See Kinnard v. Carnahan*, 25 S.W.3d 266, 269 (Tex. App.–San Antonio 2000, no pet.) (rejecting the prison mailbox rule as a matter of state law).[7]

Implicit in *Coleman*'s decision not to "extend the mailbox rule to . . . state habeas applications" is the principle that state courts have the right to interpret "state rules of filing" and are not bound by *Houston*'s construction of federal filing rules. *Coleman*, 184 F.3d at 402. As one district court in our circuit wrote in a Louisiana case:

> [T]he *Coleman* decision is distinguishable. Here, the Court need not 'extend' *Houston* by imposing its rule upon a state . . . proceeding. Rather, this Court is called upon to recognize that state courts are at liberty to adopt their own filing requirements, and in the present context, Louisiana has chosen to adopt the *Houston* rule. *See Johnson v. Whitley*, 648 So.2d 909 (La.1/6/95); *Hensley v. Louisiana,* 03-1691, (La.6/4/04), 876 So.2d 78; *Tatum v. Lynn*, 93-1559 (La. App. 1 Cir. 5/20/94), 637 So.2d 796. Ultimately, the *Coleman* decision was

under AEDPA); *Grillette v. Warden*, 372 F.3d 765, 774 (5th Cir. 2004) (predicting how the "Louisiana Supreme Court would read" a Louisiana filing deadline to determine whether an application for state post-conviction review remained pending for AEDPA purposes); *Edwards v. Dretke*, 116 Fed. App'x. 470, 471 (5th Cir. Oct. 6, 2004) (unpublished) ("The initial filing of Edwards's state habeas corpus application did not constitute a 'properly filed' application . . . because the Texas Court of Criminal Appeals determined that the application failed to comply with TEX. R. APP. P. 73.2.").

[7] We do not resolve in this Louisiana case whether *Coleman* remains good law after the Texas Supreme Court's 2004 decision in *Warner v. Glass*, 135 S.W.3d 681, 684–86 & n.3 (Tex. 2004) (adopting the "new rule" that "a pro se inmate's claim under section 14.004 of the Inmate Litigation Act is deemed filed at the time the prison authorities duly receive the document to be mailed").

9

> concerned with the imposition of a federal filing rule upon a sovereign state court. In the present case, to ignore the [prison mailbox] rule would be to impose a federal rule upon a state court proceeding, the outcome sought to be avoided in *Coleman*.

*Weaver v. Cain*, 2005 WL 1400409, *4 (E.D. La. Jun. 3, 2005) (unpublished).

Other courts have recognized our *Coleman* decision as an application of Texas state law. *See Fernandez v. Artuz*, 402 F.3d 111, 114–15 (2d Cir. 2005). Indeed, it is difficult to conceptualize *Coleman* in any other way. If *Coleman* were applying federal procedural law, then the prison mailbox rule would have controlled under *Houston*. *See, e.g.*, *Coleman*, 184 F.3d at 401.

*Coleman* cannot control the different question presented here: whether the time had expired for seeking direct review before Causey applied to the Louisiana Supreme Court. Nor can *Coleman*'s reasoning be persuasive in this Louisiana case, inasmuch as we understand *Coleman* to be an application of Texas law.

### 3. IF CAUSEY DELIVERED HIS WRIT NO LATER THAN FEBRUARY 25TH, IT WAS TIMELY UNDER LOUISIANA LAW

AEDPA's limitation period begins running when a prisoner's conviction becomes final. "AEDPA, not state law, determines when a judgment is final for federal habeas purposes." *Foreman*, 383 F.3d at 339. The Director incorrectly asserts that Louisiana law governs finality for AEDPA purposes.[8] We have held that a

---

[8] LA. CODE CRIM. PROC. ANN. art. 922 (1997) (providing that an appellate court's judgment is final "within fourteen days of

10

conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

Nevertheless, we have frequently stated that "some consideration of state law is inevitable when analyzing AEDPA limitations." *E.g.*, *Foreman*, 383 F.3d at 339. Thus, we must "look to state law for a determination of how long a prisoner has to file a direct appeal." *Roberts*, 319 F.3d at 693–94 (dicta).[9] Accordingly, we apply Louisiana law to decide whether Causey's application for direct review was timely and postponed the start of AEDPA's time-bar. *See Foreman*, 383 F.3d at 341 (holding that a

---

rendition of the judgment [or] if an application for writ of review is timely filed with the supreme court . . ., when the supreme court denies the writ").

[9] *See Caldwell v. Dretke,* 429 F.3d 521, 530 (5th Cir. 2005) (assessing state filing deadlines to determine when the time for direct review in Texas state courts had expired under AEDPA); *Dolan v. Dretke*, 2006 WL 305539, *1 (5th Cir. Feb. 9, 2006) (unpublished) (holding that a two-month extension of Texas's direct-review filing deadline granted by the Texas Court of Criminal Appeals postponed a conviction's finality for AEDPA limitations purposes); *McGee v. Cain*, 104 Fed App'x. 989, 990–91 (Jul. 28, 2004) (unpublished) (applying the Louisiana rule at issue in the case at bar, LA. SUP. CT. R. X, to determine when the time for direct review to the Louisiana Supreme Court had expired so as to render petitioner's conviction final); *Salinas v. Dretke*, 354 F.3d 425, 430 n.5 (holding that state law governs whether an out-of-time petition for discretionary review constitutes direct review under AEDPA); *cf. Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001) (holding that an application for collateral review was properly filed for AEDPA purposes where a state-law exception to Louisiana's filing deadline applied).

"timely appeal in the state court system" constitutes direct review, prevents a conviction from becoming final, and staves off the start of AEDPA's one-year limitations period).

Declining to apply Louisiana law on this issue would produce bizarre results. We would have to concoct our own common-law filing deadlines for Louisiana direct appeals, or we would have to ignore Louisiana courts' interpretations of their own statutes. Either way, we could be forced to hold that the time for state direct review had expired even where the Louisiana Supreme Court has explicitly held that a defendant's application for direct review was timely filed as a matter of state law.

Indeed, the Louisiana Supreme Court likely treated Causey's application as timely in this very case. We have stated that "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions." *Grillette v. Warden*, 372 F.3d 765, 775 (5th Cir. 2004). There was no such indication here. Ignoring the Louisiana Supreme Court's adoption of the prison mailbox rule would be inconsistent with basic principles of comity and with the respect due state court decisions under AEDPA. *See Melancon v. Kaylo*, 259 F.3d 401, 405 n.3 (5th Cir. 2001).

Under Louisiana's prison mailbox rule, Causey's application for direct review was filed when Causey placed it in the prison mail system. If Causey delivered his application to prison authorities no later than February 25, 2000, then this was within

12

Louisiana's thirty-day window for certiorari applications. In that case, Causey's conviction did not become final, and AEDPA's limitations period did not begin to run, until the Louisiana Supreme Court denied Causey's application on February 16, 2001. Since the limitations period would be tolled while Causey sought state collateral relief, his federal habeas petition would be filed within the one-year deadline.

Accordingly, we VACATE the district court's dismissal. We REMAND for the district court to determine the date on which Causey delivered his application to prison authorities and, if necessary, to consider the substance of Causey's claims for relief.